WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Katie Foster,

          Plaintiff,

v.

Wells Fargo Bank NA,

          Defendant.

No. CV-13-01701-PHX-GMS

**ORDER**

Pending before the Court is Defendant Wells Fargo Bank NA's Motion to Dismiss. (Doc. 8.) For the following reasons, the Motion is granted.

## BACKGROUND

This case arises from a letter from Defendant Wells Fargo approving a short sale of real property by its owner, Shelly Ulestad ("Ulestad"), a non-party to this lawsuit. Ulestad owned real property in Phoenix, Arizona. She reached an agreement with Plaintiff Kate Foster to sell that property to Plaintiff in a short sale. Ulestad and Plaintiff's purchase contract contained a short sale addendum, which made clear that the purchase contract provided a price for the property that would not fully satisfy either the outstanding balance of Ulestad's mortgage on the property, obtained through Wells Fargo, or the second lien against the property held by Desert Schools Federal Credit Union. (Doc. 1-1 ¶ 6.) Thus, the sale would not go forward until Ulestad received permission from both lenders. (*Id.*)

Ulestad sought approval of the short sale. In response, in a letter dated May 13, 2013 (the "short sale approval letter"), America's Serving Company, Wells Fargo's loan

1  servicer and a division of Wells Fargo Home Mortgage, approved the short sale
2  transaction as long as Ulestad met certain requirements. (Doc. 1-1 at ¶ 11.) The letter
3  stated that if the requirements were met, Wells Fargo would approve the short sale, pay a
4  certain amount of the second mortgage to Desert Schools Federal Credit Union, and
5  ultimately release Ulestad from her Wells Fargo mortgage. (*Id.* at ¶¶ 13–15.) To comply
6  with the letter's requirement that the sale be an arm's length transaction, both Foster and
7  Ulestad signed an affidavit dated May 14, 2013, avowing that the sale was at arm's
8  length. (*Id.* at ¶ 10.)

9  Ulestad and Plaintiff continued to go forward with the transaction and prepare for
10 the close of escrow. (Doc. 1-1 ¶ 11.) Plaintiff alleges that Wells Fargo did not indicate
11 that there was any problem with the transaction at this time. (*Id.*) On July 10, 2013, Wells
12 Fargo provided the final approval necessary to close escrow. (*Id.* ¶ 12.) On July 12, 2013,
13 Plaintiff and Ulestad closed escrow and lien payments were sent to Wells Fargo and to
14 Desert Schools Federal Credit Union. (*Id.* ¶ 13.) On this same day, Wells Fargo contacted
15 Plaintiff and told her that there were problems with the transaction and that they would
16 not provide a release of their lien on the property to complete the sale. (*Id.* ¶ 15.) The
17 problems identified by Wells Fargo were that title to the property had inappropriately
18 been placed into a trust, in violation of the short sale approval letter, and that Plaintiff had
19 reached an agreement to sell the property to a third party after the short sale closed, in
20 violation of the arm's length affidavit. (*Id.* ¶ 16.) On July 15, 2013, the next business day
21 after the close of escrow, Wells Fargo returned the payoff funds. (*Id.* ¶17.) At some point
22 later, Wells Fargo noticed a trustee's sale of Ulestad's property through its trustee, First
23 American Title, scheduled for July 25, 2013. (*Id.* ¶¶ 22.)

24 Plaintiff filed the present action against Wells Fargo in Maricopa County Superior
25 Court on July 24, 2013. (Doc. 1-1.) She alleged breach of contract and breach of the
26 covenant of good faith and fair dealing, sought declaratory relief that the short sale
27 approval letter was a payoff statement and that she was entitled to specific performance,
28 and sought injunctive relief to enjoin the July 25 trustee's sale of the property for the

pendency of the suit. (*Id.*) Plaintiff also filed a Motion for a Temporary Restraining Order to halt the July 25 sale. (Doc. 1-1 at 31.) Later on July 24, Maricopa County Superior Court Judge Robert Oberbillig granted Plaintiff's Motion for a Temporary Restraining Order, pending a hearing on the matter scheduled for July 30. (Doc. 1-1 at 34.) The record indicates that this hearing was postponed, but the record does not indicate when, if ever, the hearing occurred. (Doc. 1-1 at 43–47.) On August 16, 2013, Defendant removed the case to this Court. (Doc. 1-1 at 27.)

Defendant now moves to dismiss on the grounds that Plaintiff's allegations do not support the existence of any contract between Plaintiff and Defendant and on the grounds that the short sale approval letter was not a payoff statement, and thus cannot be enforced by Plaintiff. (Doc. 8.)

**DISCUSSION**

**I.     LEGAL STANDARD**

Rule 12(b)(6) is designed to "test the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Twombly*, 550 U.S. at 555. Accordingly, a plaintiff must do more than employ "labels," "conclusions," or a "formulaic recitation of the elements of a cause of action." *Id.*

When analyzing a complaint for failure to state a claim under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

## II. APPLICATION

Defendant moves to dismiss on the grounds that Plaintiff has failed to state a cognizable claim because she has failed to plead sufficient facts to establish that there was a valid and enforceable contract between Plaintiff and Defendant. In addition, Defendant argues that the short sale approval at issue in this case does not meet the statutory definition of a payoff statement under Arizona law.

### A. The Letter is Not a Contract Between Plaintiff and Defendant

Defendant first moves to dismiss on the grounds that, if the short sale approval letter is a contract, Plaintiff is not a party to that contract. Plaintiff asserts claims of breach of contract and breach of the covenant of good faith and fair dealing. (Doc 1-1 ¶¶ 25–36.) These claims are both predicated on Plaintiff's allegation that the short sale approval letter sent from Defendant to Ulestad is a valid and enforceable contract to which Plaintiff is a party. (*Id.* ¶¶ 26, 33.) The short sale approval letter is dated May 13, 2013, and addressed to Ulestad. (*Id.* at 11.) The letter states that "[t]his Notice of Short Sale Approval provides all of the conditions and requirements that must be met before the short sale transaction can be finalized." (*Id.*) It goes on to describe these requirements, including that the sale be an arm's length transaction. It notes that "[f]ailure to comply with any of the conditions/requirements included in this Notice could result in our refusal to issue a satisfaction, release or conveyance of your mortgage." (*Id.* at 14.) The only reference to Plaintiff in the letter is a reference to the purchase contract between Ulestad and Plaintiff. (Doc. 1-1 at 12 ("This approval is based on the purchase contract dated

02/01/2013 between SHELLY ULESTAD, the seller(s), and KATIE FOSTER, the buyer(s), for a purchase price of $173,500.000."))

Assuming the letter constituted a unilateral contract, as Plaintiff alleges, Plaintiff does not plead sufficient facts to establish that she was a party to that contract. Plaintiff states that she must be a party to the contract because "the vast majority of the performance required under the letter is from Plaintiff." (Doc. 13 at 5.)  While the short sale approval was certainly based on Ulestad's separate purchase contract with Plaintiff, the terms of the letter only obligate its recipient, Ulestad. The letter lists the conditions that "the borrower/seller must meet" (Doc. 1-1 at 11–12) and requires that the seller complete certain paperwork (*Id.* at 13–14). The letter references the approved sale price and seller costs from the purchase agreement with Plaintiff, but does so in the context of instructing Ulestad what steps she must take to obtain final approval of that sale and ultimately receive a release of her mortgage.

While Plaintiff may be correct that Defendant would not have issued the letter to Ulestad if Ulestad had not entered into the purchase contract with Plaintiff, it does not follow that Plaintiff becomes the promisee of the contract between Ulestad and her lender. *See Watson Const. Co. v. Amfac Mortgage Corp.*, 124 Ariz. 570, 579, 606 P.2d 421, 430 (Ct. App. 1979) (quoting 1 Corbin on Contracts § 21.52 (1963)) ("In the case of a unilateral contract, there is only one promisor; and the legal result is that he is the only party who is under an enforceable legal duty. The other party to this contract is the one to whom the promise is made, and he is the only one in whom the contract creates an enforceable legal right.") "[P]rivity of contract must exist before a party may seek to enforce a contract . . ." *Goodman v. Physical Res. Eng'g, Inc.*, 229 Ariz. 25, 30, 270 P.3d 852, 857 (Ct. App. 2011) (discussing *Stratton v. Inspiration Consol. Copper Co.*, 140 Ariz. 528, 529–30, 683 P.2d 327, 328–29 (App. 1984)).  As Plaintiff does not allege facts that establish such privity of contract, she is unable to bring her claims based on that contract.

**B.     The Letter is Not a Payoff Statement**

Defendant next moves to dismiss Plaintiff's claim for a declaratory judgment stating that the short sale approval letter constitutes a payoff statement and that Plaintiff is entitled to specific performance pursuant to that payoff statement. (Doc. 1-1 ¶¶ 37–41.) Under Arizona law, a payoff demand statement is "a written statement that is prepared in response to a written demand made by an entitled person or that person's authorized agent that sets forth the amounts required by the secured lender to fully satisfy all of the obligations secured by the loan that is the subject of the demand." Ariz. Rev. Stat. Ann. § 33-715(J)(4). Here, the short sale approval letter was issued in response to Ulestad's request for permission to do a short sale. By definition, this was a request to sell her property for less than the outstanding balance of the debt owed to Defendant. The short sale approval letter outlines Defendant's conditional approval for Ulestad to proceed with the short sale even though the short sale would not, as the statute requires, "fully satisfy all the obligations secured by the loan." The short sale approval letter does not meet the statutory definition of a payoff statement. Thus, Plaintiff cannot be entitled to specific performance under the statute. Therefore,

**IT IS ORDERED** that Defendant Wells Fargo's Motion to Dismiss (Doc. 8) is **granted**.

**IT IS ORDERED** directing the Clerk of Court **terminate** this action and enter judgment accordingly.

Dated this 10th day of March, 2014.

*G. Murray Snow*
G. Murray Snow
United States District Judge